By the Court

Lumpkin, C. J.,
delivering the opinion.
The Legislature passed an Act in 1801, prescribing the only mode of manumitting slaves in this State, namely: by the General Assembly, and prescribing a penalty for every breach of the Act, and declaring that deeds of manumission should not be recorded: Cobb’s Digest, 983.
In 1818, a supplementary Act, more effectually to enforce the Act of 1801, was passed. The preamble recites that, " Whereas, the principles of sound policy, considered in reference to the free citizens of this State, and the exercise of humanity to the slave population within the same, imperiously require that the number of free persons of color within this State should not be increased by manumission or by the admission of such persons from other States to reside therein; and, whereas, divers persons of color, who are slaves by the laws of this State, having never been manumitted in conformity to the same, are nevertheless in the full exercise and enjoyment of all the rights and privileges of free persons of color, without being subject to the duties and obligations incident to such persons, thereby constituting a class of people equally dangerous to the safety of the free citizens of this State and destructive to the comfort and happiness of the slave population thereof, which it is the duty of this Legislature by all just and lawful means to suppress: Cobb’s Digest, 989, 990.
By the 4th section of the Act of 1818, it is provided that all and every will and testament deed, whether by way of trust or otherwise, contract or other instrument in writing, or by parol, made and executed for the purpose of effecting or endeavoring to effect the manumission of any slave or slaves, either directly or by conferring or attempting to confer, directly or virtually, by allowing and securing, or attempting to allow and secure to such slave or slaves the right or privilege of working for his, her or themselves, free from the control of the master or owner of such slave or slaves, or of enjoying the profits of his, her or their labor or skill, shall be, and the same are hereby declared to be utterly null and void: Cobb’s Digest, 991.
*65 By the 10th section of the Act of 1818, it is enacted, that “it shall be the duty of all Courts and Judges before whom any proceedings may be had under this Act, so to construe the several provisions thereof as to carry the same into full and complete operation according to the true intent and spirit and meaning thereof, as declared in the preamble of the same. And all and every such Court and Judges are hereby invested with full powers for such purpose, and are authorized and required to make all necessary rules and regulations and adopt all needful proceedings not herein specially provided, according to the usual course of justice which may be at any time required for the purposes aforesaid: ” Cobb’s Digest, 994. This is a very remarkable provision, having no parallel in the statute book.
Now let us examine this will in the light of these enactments. By the second item the testator declares, “It is my will and desire, and I do so direct my executors, that my place, known as the Turner place, in said eounty, containing three hundred and fifty acres, more or less, shall be kept up by my friend, Dr. Baldwin B. Miller, Sr., and that the following named negroes be placed and kept thereon, namely: Rachael and her children, Jason, Elijah, Anna, Julia, also the sister of Rachael, a woman named Amy and her child, Tina and Tina’s children, named James and Alice, and any other children that Tina may hereafter have. It is my will and desire and I so direct, that said place and slaves shall belong to Dr. Baldwin B. Miller, Sr., that the slaves shall be treated with all kindness and humanity, and provision shall be made for their support from the proceeds of my other property.”
By the third item, the testator directs that $1,000 00 be paid to Dr. Miller for his trouble about his estate, and by the fourth item that his negro slave woman, named Eliza and her children, Georgia Ann, Amanda, Ella and Pleasant, and any children Eliza shall have thereafter, shall go immediately into the possession of his brother, Augustus Lewis, and shall be held by him absolutely from the time of his death as his awn property.
Read the Act of 1818, according to the true intent and spirit and meaning thereof, and then read the provisions of this will, and is not the conviction forced upon the mind that the testator *66 intended to bestow upon the slaves mentioned in the second item of the will, freedom, in fact, and provide a home or residence for them for an indefinite period of time, to-wit: the Turner place, where they were to be maintained out of his other property ? I said for an indefinite period, because it was to be a home for Tina’s children, James and Alice and of any other children that Tina may hereafter have.
But let us scrutinize the words of this will a little more closely. Why is $1,000 00 given to Dr. Miller for his trouble in managing the testator’s estate? The propounders of the will say that he had already received a considerable legacy in the negroes mentioned in the second item of the will, and the Turner tract of land. Was not this ample compensation? Would it not rather seem that the $1,000 00 was intended to indemnify him for his trouble in taking care of this family of idlers left on the Turner place and in providing a support for them out of the other estate? But above all, mark the striking difference in the language used in the gifts to Dr. Miller and Augustus Lewis. In the former, the testator simply says, “said place and slaves shall belong to Dr. Baldwin B. Miller, Sr. In the latter, the phraseology is, that the negro woman Eliza and her children shall go immediately into the possession of my brother, Augustus Lewis, and shall be held by him absolutely from the time of my death as his own property. The question then is, not whether the words “shall belong to ” Dr. Miller are sufficient to pass the title. Resort is had to them, and they are contrasted with other words to indicate the mind of the testator. The conclusion is irresistible that in the one case the testator purposed bestowing on a portion of his slaves quasi freedom, and pains were taken to burden the conscience of his executor with a trust for this object, while in the other the gift, free and untrammelled, was left to his brother for his own benefit.
Our judgment, therefore, is that the second item of the will is utterly null and void, and that the money directed to go to the support of those negroes lapse into the residuum of the estate as well as the Turner place and the negroes themselves. We further think that the parol testimony was properly excluded, the will being capable of being explained by itself, *67 independent of alkmde proof. If, however, the evidence was in it would only strengthen our conclusions.
Let the judgment in the first case be affirmed; and in the second case let the judgment be reversed, upon the ground that the Court erred in holding that there is nothing in the will of the testator that contravenes the provisions of the Act of 1818, this Court being of the opinion, that it was the intention of the testator, manifested by the will itself, to confer quasi freedom upon the slaves mentioned in the second clause of the will, We further hold that the parol testimony was properly ex-eluded.